JOSIAH WHITE et al.

*v.*

YOUNG'S PIER AND HOTEL COMPANY et al.

[Decided March 13th, 1911.]

1. In the grant to Atlantic City, by divers owners of premises abutting on the Atlantic ocean, of a sixty-foot wide strip of land between high and low-water mark for the purpose of a public street and a steel, board or plank walk, with a covenant on the part of the grantors not to put or erect or allow to be placed or erected on the lands thereby granted or on the ocean side thereof, any building or structure, except as provided by ordinance, the covenants to run with the land granted and those on the ocean side thereof, a general scheme was entered into between the co-grantors and Atlantic City, by express covenant with the municipal corporation and by implied covenant with each other—Atlantic City being trustee for all of the grantors—for the purpose of maintaining an open and unobstructed beach front with right of light, air and view over and across the oceanward land from the boardwalk.

2. Atlantic City, as grantee in the easement deeds, and as trustee for the public with reference to its rights under the grants and the general scheme of improvement, may sue to enforce its and the public's rights; so, also, may any co-grantor who joined in the gift of the easement, especially when the city has been requested to bring suit to vindicate any right under the easement deeds and has refused to do so.

3. An order denying a motion for an interlocutory injunction, without any answer being filed in the cause and no issue between the parties being adjudicated upon final hearing, is not *res judicata* of the issue tendered by the bill but not joined by the defendant, and, not being *res judicata* as to the parties or privies to the suit, it is without force *stare decisis* as to strangers.

4. The defendant, Young's Pier and Hotel Company, having a structure on its lands oceanward of the boardwalk at the time of the execution of the easement deed by its predecessor in title, namely, a wooden pier extending from the boardwalk into the ocean, has the absolute right to use the old pier on the land in question, including such parts of it as have been repaired and reconstructed, as fully to all intents and purposes as its then owner enjoyed the right to use it at and before the time of the execution of the particular easement deed; and the restrictive covenant in that deed does not operate upon the situation, because the defendant had a property right in the pier existing upon the premises at the time the deed was made, which was not in any respect surrendered, and neither the city nor any of the co-grantors may interfere with the

defendant's enjoyment of that right; and, as the owner of the pier prior to the execution of the easement deed might have turned a pavilion on it into stores, equally so may that alteration now be made, or, having been made, may now be maintained.

On final hearing on pleadings and proofs.

*Mr. George A. Bourgeois* and *Mr. Robert H. McCarter*, for the complainants.

*Mr. Harry Wootton, Mr. Clarence L. Cole, Mr. Richard V. Lindabury* and *Mr. William J. Magie*, for the defendants.

WALKER, V. C.

The bill of complaint was filed by certain owners of lands situate on the landward side of the boardwalk in Atlantic City, in this state, to enjoin the conducting of, or permitting to be conducted, a mercantile business on the lands of the defendant, Young's Pier and Hotel Company (hereinafter to be called the Pier Company), on the oceanward side of the boardwalk, and from erecting and maintaining stores on the pier thereon, and also commanding the Pier Company to remove the stores by it already erected on the pier. Such facts as are necessary for the elucidation of the question at issue will be hereafter stated.

Atlantic City, as is well known, is a large seaside resort, with a very extensive ocean frontage.

The complainants' contention is that a general scheme was entered into between the various property owners fronting upon the Atlantic ocean by written covenant with Atlantic City and by implied covenant with each other—Atlantic City being trustee for all of the grantors—for the purpose of maintaining an open and unobstructed beach front. There is no claim that the Pier Company has entered into any express contract with the complainants. Complainants' principal reliance is upon the covenants contained in what is called the "boardwalk easement deed of April 30th, 1896." It appears that the Pier Company's predecessors in title to the land whereon the pier in question is erected, executed one of the boardwalk easement deeds, which deed was

recorded, and, therefore, the Pier Company took with notice. The series of boardwalk easement deeds, and there were many of them, Atlantic City accepted. They contain the following covenant and proviso:

"And the said parties of the first part, for themselves, their heirs, executors, administrators and assigns, do hereby covenant, promise and agree to and with the said party of the second part, its successors and assigns, that they and each of them, the said parties of the first part, their heirs, executors, administrators and assigns, shall not and will not put or erect or allow to be placed or erected on the lands hereby granted or on the ocean side thereof any building or structure, except as provided by ordinance, and the party of the second part hereby covenants and agrees that it will not place or erect or allow to be placed or erected any buildings or structure of any kind or description on the lands above described except as above provided, and that these covenants shall attach to and run with the lands and premises hereby granted and the lands on the ocean side thereof so long as the same shall be used for the purpose of a street and a public steel, board or plank walk, and that the same may be enforced or its breach or non-observance may be restrained or enjoined at any time by the said party of the second part, its successors and assigns.

\* \* \* \* \* \* \* \* \* \* \*

"*Provided, however,* that the within grantors shall not be prohibited from building a pier in front of their property and connecting the same to the new walk about to be erected, and upon the further condition that the said pier shall be of at least one thousand feet in length, extending into the ocean beyond the present sixty feet wide strip, and constructed of iron or steel, and shall not permit the sale of any commodity upon the same and be confined to charging only an entrance fee; *and provided further,* that the City Council of Atlantic City shall not grant a right of way to any railroad company or street railway company now incorporated or to be hereafter incorporated, over and along the same."

On a bill filed by Atlantic City against the Young-McShea Amusement Company (one of the Pier Company's predecessors in title) to restrain the defendant from selling commodities on its pier (the very pier in question), and from charging a fee for witnessing entertainments upon the pier, other than a fee for entrance to the structure, Vice-Chancellor Reed advised a decree for the complainant (*Atlantic City* v. *Young-McShea Amusement Co., 62 N. J. Eq. (17 Dick.) 147*) and an injunction issued. On appeal, the court of errors and appeals reversed the decree advised by the vice-chancellor upon the ground that the case rested upon the *proviso* in the easement deed, and held that

the *proviso* related exclusively to a pier to be erected in the future, and that it did not inhibit the using and maintaining of one already built; that the defendant had a property right in the pier existing upon the premises at the time the easement deed was made which had not in any respect been surrendered to the city, and that the complainant had shown no right to interfere with the defendant in the use of the old pier as fully as that right had been enjoyed before the execution of the easement deed. *Atlantic City* v. *Young-McShea Amusement Co., 63 N. J. Eq. (18 Dick.) 831, 833*.

The Pier Company contends that the case just cited, and also the unreported case of *Atlantic City* v. *Young-McShea Amusement Co.* (bill filed April 28th, 1902, docket 25, page 13), the files of which were offered in evidence, are absolutely dispositive of the case at bar, the question at issue being *res judicata* if the complainants claim in the right of Atlantic City, or, if they claim as individuals and not as privies to the suit mentioned (for they were not parties), the question is at rest under the doctrine of *stare decisis*. The bill in the unreported case showed that at the time of the execution and delivery of the easement deed of 1896 by the Young-McShea Amusement Company to Atlantic City there existed upon and across the land owned by the company, extending into the ocean on the ocean side of the sixty-foot-wide strip of land conveyed for a highway (the boardwalk), a wooden structure or pier upwards of one thousand feet in length, extending into the ocean, and that on April 3d, 1902, upwards of three hundred feet of that wooden structure or pier was burned to the water's edge and entirely destroyed; that the Young-McShea Amusement Company had then recently begun to construct and rebuild entirely of wood that portion of the pier which was destroyed by fire, and intended to erect a large wooden superstructure with lofty roof for a dancing hall and for other similar purposes; that the structure, when completed, would obstruct and interfere with the view of the ocean from the boardwalk, and would be in every respect a violation of the covenants and conditions of the easement deeds; that under the *proviso* mentioned there existed authority to build, construct and maintain only a pier of steel or iron upon and across the grantor's

lands on the beach front, and prayed an injunction against such reconstruction. This bill was verified by affidavits, and upon its being filed, an order to show cause, with an *ad interim* stay, was made and served. On the return of the order the defendant filed affidavits, and an order was made and filed April 18th, 1902, discharging the order to show cause and denying the injunction prayed for. Here the case ended, no answer being filed. No issue was raised between the parties which was adjudicated upon final hearing. No opinion or memorandum was filed by Vice-Chancellor Reed, who advised the order denying the interlocutory injunction asked for, and it may well be that the denial went upon the ground that the case in the preliminary stage was doubtful on the law of the facts, or both, or that irreparable injury was not shown. In any event, there is no such adjudication in the case as makes the question at issue in the cause now being considered *res judicata,* or gives it force *stare decisis.* The merits were not decided, and it is only a decision on the merits of a cause of action that is conclusive upon the parties and their privies. *Buckingham* v. *Ludlam, 37 N. J. Eq. (10 Stew.) 137.* The judgment must be final to be *res judicata. 24 Am. & Eng. Encycl. L. (2d ed.) 793.* For the same reason that the unreported case has no application *res judicata* to the cause *sub judice,* it has no application *stare decisis.*

As already remarked, the very pier concerning which the controversy arose in *Atlantic City* v. *Young-McShea Amusement Company,* is the same pier which is the subject of the controversy in the case at bar. That case (*Atlantic City* v. *Young-McShea Amusement Co., 62 N. J. Eq. (17 Dick.) 147*), in this court, was decided upon a mere memorandum which referred to the opinion of Vice-Chancellor Reed in *Atlantic City* v. *Atlantic City Steel Pier Co., 62 N. J. Eq. (17 Dick.) 139,* as deciding all the points raised in the former. Now, in *Atlantic City* v. *Atlantic City Steel Pier Company,* the learned vice-chancellor had before him the same question of general scheme for the improvement of the beach front at Atlantic City as is here involved, and, as I understand it, that scheme was found to exist, and to be operative upon the land in question. Said Vice-Chancellor Reed—*62 N. J. Eq. (17 Dick.) (at p. 143):*

"Then, again, this covenant is one of many similar covenants entered into by a body of covenantors as part of a common scheme for the mutual advantage of each and all such covenantors. This feature, in my judgment, brings it within the exceptional class of cases discussed by Chief-Justice Beasley in *Brewer* v. *Marshall, 18 N. J. Eq. (3 C. E. Gr.) 337; S. C. on appeal, 19 N. J. Eq. (4 C. E. Gr.) 537.*"

Furthermore, in this same case of *Atlantic City* v. *Allantic City Steel Pier Company,* Vice-Chancellor Reed observed (at *p. 142*) :

"Now, the agreement, as I construe it, contains a grant to the public of a right in the nature of an easement. It, indirectly by a negative covenant, grants a right of light, air and view over and across the oceanward land from the boardwalk. This right is limited by a reservation to the donors of the privilege of placing thereon a certain kind of structure. And the uses to which those structures shall be confined is defined, for the purpose of regulating the kind of structure and the number of structures which could be, and would likely be, erected. The owners have themselves limited the uses to which such structures may be put. Such a restricted grant, in my judgment, the city may accept, and, as the representative and trustee of the public, may invoke the judicial arm of the government to protect."

Then, too, the court of errors and appeals seems to have expressly decided in the two cases of *Atlantic City* v. *Associated Realties Corporation, 73 N. J. Eq. (3 Buch.) 721,* and *Atlantic City* v. *Associated Realties Corporation, 75 N. J. Eq. (5 Buch.) 568,* that these boardwalk easement deeds created a general scheme for the benefit of the grantors and of the public in the preservation of an open view oceanward of the boardwalk.

The boardwalk easement deeds of 1896 were founded upon a sufficient consideration. This was expressly held by Vice-Chancellor Grey in *Evans* v. *New Auditorium Pier Co., 67 N. J. Eq. (1 Robb.) 315* (at *p. 318*), where he said:

"Each of these co-grantors gave up that part of his own land which was covered by the boardwalk strip in consideration of a like gift made by his co-grantors. The attending covenants, securing light, air and view, were obtained for a like consideration.

It was a general scheme of public improvement in which all participated. Its form was a covenant with Atlantic City, but in fact it was a gift by the co-grantors to the public and to each other. Atlantic City paid nothing to the grantors, but it spent large sums in building the boardwalk.

"All the values were given by the grantors. No one grantor, nor anyone claiming under him, having accepted the benefits of the others' gifts, can be permitted to destroy its value in an essential particular, as the defendant company now seeks to do."

All of the complainants, or their predecessors in title, were owners of land abutting on the Atlantic ocean in Atlantic City and executed the boardwalk easement deed; likewise as to the defendant Pier Company, in reference to the lands whereon the pier in question was and is erected, and, therefore, these covenants are effective and operative between the parties to this suit on the issue here presented, if the complainants have capacity to sue in respect to the matters charged in the bill, and if, further, the facts in the case at bar bring the defendants' land, whereon its pier is erected, within the terms of the covenant.

As to the standing of the complainants to maintain this suit.

That Atlantic City, as grantee in the easement deeds and as trustee for the public with reference to its rights under the grant and the general scheme of improvement, may sue to enforce its own and the rights of the public, is, I think, undoubted. It was expressly so decided by Vice-Chancellor Reed in *Atlantic City Steel Pier Co., ubi supra,* and is conceded by the defendants.

The complainants, or some of them, requested the city to bring this particular suit, but the city, upon the advice of counsel that the owner of the pier has a right to have stores upon it on the ocean side of the boardwalk, so long as they are kept within the limits of the pier as it existed when the boardwalk easement deed was executed, refused to bring the suit.

The defendants contend that the complainants themselves have no standing to maintain this suit. But this question was decided otherwise by Vice-Chancellor Grey in *Evans* v. *New Auditorium Pier Co., 67 N. J. Eq. (1 Robb.) 315,* in which case he considered the very same easement deed of April 30th, 1896, and said (at *p. 319*) :

"Any co-grantor who joined in the gift of the easement has a status to enforce the general scheme arranged and perfected by it. This was a case brought by one of the grantors individually, and not by the city."

Although this case was reversed (*Evans* v. *New Auditorium Pier Co.*, 67 *N. J. Eq.* (*1 Robb*.) 620) for the reasons given for the reversal of *Atlantic City* v. *New Auditorium Pier Co.*, Ibid. 610, the reversal proceeded upon grounds other than the capacity of the complainant Evans to sue. Therefore, I conclude, that the complainants in this case have a right to maintain this suit, especially in view of the fact that Atlantic City was requested to bring it and refused.

The question is, therefore, squarely presented, as to whether the Pier Company shall be restrained from erecting stores upon its pier, and from conducting mercantile business in those already erected, and be commanded to remove from off the pier the stores already thereon.

As to complainants' right to an injunction—

The complainants contend that the covenant in the boardwalk easement deed operates to prevent any building or structure being put or erected on the land thereby granted (the boardwalk strip), or on the ocean side thereof, except as provided by ordinance (and no ordinance has authorized their construction), and, as covenants in a deed are construed most strongly against the grantor, that, therefore, it should be held in this case, that the stores in question may not be erected, or being erected, should be decreed to be removed. The argument is that, although under the decision of the court of errors and appeals in *Atlantic City* v. *Young-McShea Amusement Co.*, 63 *N. J. Eq.* (*18 Dick*.) 831, the building erected upon the lands of the Pier Company oceanward of the boardwalk at the time the easement deed was executed, may be maintained as a then existing structure, nevertheless, the covenant referred to is operative so as not to permit of any erections being made upon the pier subsequent to the execution of the deed; in other words, that only the pier as it then existed may be continued in existence, and they say that the case just mentioned went no further than to hold that the defendant had the right to sell commodities and to charge fees other than

for admission to the pier, because it was an existing structure. This view, in my judgment, is untenable. It is true that the precise facts here involved were not present in the former case, but I think the opinion of the court of errors and appeals that the pier owner had a property right in the existing pier which had not in any respect been surrendered to the city and that the defendant might use the pier as fully as its right to do so had been enjoyed before the execution of the easement deed, is equally applicable to the facts present in the case at bar. With the language of this very covenant before him, Mr. Justice Van Syckel, speaking for the court of errors and appeals, in *Atlantic City* v. *Young-McShea Amusement Co.,* 63 *N. J. Eq.* (*18 Dick.*) (at *p. 833*), made in effect, as I read it, an unqualified declaration that the amusement company had a right to use the old pier already erected as fully after the execution of the easement deed of 1896 as before. True it is that the exact language of the learned justice was that "the complainant has shown no right to interfere with the defendants in the use of the old pier as fully as they enjoyed it before the execution of the agreement of 1896;" but, in deciding the question presented to me in the case at bar, I have no hesitation, in view of the facts in this case, and the law pronounced by the court of errors and appeals in that case, to hold that the defendant Pier Company, in this case, has the absolute right to use the old pier on the land in question, including such parts of it as have been repaired and reconstructed, as fully to all intents and purposes as its then owner enjoyed the right to use it at and before the time of the execution of the easement deed of 1896. "Maintenance," of course, includes repairs; and "use," without restriction, must mean "lawful use," which at least includes such alterations and reconstruction as might have been made for any purpose for which the pier might lawfully have been used before the execution of the easement deed. In other words, if the owner of the pier, prior to the execution of the easement deed of 1896, might have turned a pavilion on it into stores, then equally so may that alteration now be made, or, having been made, may now be maintained.

In my judgment, the restrictive covenant in the easement deed of 1896 does not operate at all upon the facts of this case. The

Pier Company, as to its existing pier, does not come within the *proviso* of the covenant, as it has not erected a new steel pier, which sort of erection is permitted by the *proviso;* and it is not bound by the covenant with reference to the old pier because that structure existed at and. before the time the covenant, which operates in future, was made, and which pier, therefore, it is entitled to use and enjoy as fully as the right to use and enjoy it inhered in its predecessor in title prior to the execution of the easement deed, which right was then unlimited, and is so now as far as the easement deed is concerned.

These views lead to a denial of the injunction sought and the dismissal of the bill. The defendants are entitled to costs.